## George J. Sauter, et al., v. Carrie Anderson.

### Gen. No. 4,167.

1. MEANS OF SUPPORT—*when liability for loss of, does not attach under Dram-Shop Act.* In an action brought under the Dram-Shop Act, seeking to impose liability upon the defendants for loss of means of support, a recovery cannot be sustained where it appears that the death of the person who was the means of support of the plaintiff was the result of his own wilful and unlawful conduct.

2. MEANS OF SUPPORT—*when Dram-Shop Act does not impose liability for loss of.* Liquor dealers are by virtue of this act only held to responsibility for the natural results of their traffic; they are not responsible for conduct which is in no way caused by it, and the statute does not impose liability where the intoxication complained of did not cause or contribute to the injury in question.

3. REVERSAL WITHOUT REMANDMENT—*when, will not be ordered.* Where the Appellate Court reverses because of the failure of proof, it will not refuse to remand where it concludes that more light may be cast upon the case upon another trial.

4. STATUTES—*how, construed.* Statutes should, if reasonably possible, be so construed as to render them valid.

5. CROSS-EXAMINATION—*what proper.* Where a witness upon direct examination has testified that he was drunk, it is proper upon cross-examination in order to ascertain the truth of such statement to inquire as to what he said immediately after the time when it was claimed he was so drunk.

6. WITNESS—*when testimony of, does not conclude the party calling him.* Where a witness testifies in such manner as to surprise the party calling him, such party is not concluded thereby but may show a different state of facts by another witness.

7. VERDICTS—*power of Appellate Court over.* The final duty of determining whether a verdict is clearly against the weight of the evidence is confided to the Appellate Court, and where that court is convinced that a verdict is so against the weight of the evidence, it will set it aside.

Action on the case under Dram-Shop Act. Error to the Circuit Court of Knox County; the Hon. GEORGE W. THOMPSON, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded. Opinion filed March 14, 1904. Rehearing denied and additional opinion filed April 14, 1904.

COOKE & STEVENS and GEORGE M. HOFFHEIMER, for plaintiffs in error.

WILLIAMS, LAWRENCE & WELSH, for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Charles G. Anderson was stabbed and killed by William Wilder, a colored man, in the saloon of George J. Sauter in Galesburg on October 7, 1897. Wilder had been drinking intoxicating liquor that day in Sauter's saloon and other saloons. This is a suit brought by Anderson's widow against Sauter and the owners of the building in which he kept the saloon, and against the keeper of another saloon close by, and against other parties who have since been dismissed from the case, to recover damages for loss of her means of support. The declaration averred the keeping of these saloons; the ownership of the building in which Sauter kept; that these saloon keepers sold and gave intoxicating liquors to Wilder; that by means thereof he became intoxicated, and while intoxicated unlawfully, wrongfully and violently stabbed and killed Anderson, whereby plaintiff was deprived of her means of support. The declaration did not aver that Wilder's intoxication caused or contributed to Anderson's death. Defendants did not demur, but pleaded not guilty. At a jury trial defendants·introduced no proof. Plaintiff had a verdict for $3,000. Defendants moved for a new trial, which was denied. Plaintiff had judgment on the verdict. Defendants appealed to the Supreme Court where that appeal was dismissed. Sauter v. Anderson, 199 Ill. 319. Afterwards defendants sued out this writ of error from this court to reverse the judgment of the Circuit Court.

The trial court instructed the jury that in order to recover, plaintiff must prove, not only that Wilder was intoxicated when he killed Anderson, but also that Wilder's intoxication caused or contributed to Anderson's death. The Supreme Court held the omission of that allegation from the declaration·was cured by verdict. The proof warranted the jury in finding Wilder was intoxicated. We consider it a serious question, however, whether the proof justified the jury in finding that Anderson was killed in con-

sequence of Wilder's intoxication. Wilder and one Daniels, who was sitting in the saloon at the time, were the only witnesses who testified to the circumstances of the killing.

According to Wilder's testimony he went to Sauter's saloon drunk and sat down in a chair and .went to sleep. Anderson came to where Wilder sat, twisted his neck and twisted him out of his chair, and called Wilder a "black son of a bitch." Wilder said nothing but got back upon the chair, while Anderson returned to the bar and had a glass of beer on the bar before him. Wilder came up to the bar and asked the barkeeper for a glass of water, which was given him. Anderson said, "You are up here again, are you, you black son of a bitch," or words to that effect, and Wilder replied, "You don't know me and I don't know you. You ought not to call me that name." Then Anderson threw his beer in Wilder's face, or struck Wilder on the arm with the beer glass, spilling the beer over him. Anderson then grabbed Wilder by the back of the neck, and brought Wilder's head down and against the bar, and put his knee in Wilder's left side, and struck Wilder on the collar bone with the beer glass and broke the beer glass. When Anderson delivered this second blow Wilder was trying to get his knife out of his pocket, and after he was so struck he got the knife, and opened it with his teeth while his head was down in the position described. Then Wilder struck at Anderson with his open knife, though his head was held in such a position that he could not see where he struck. Then Anderson would not let Wilder alone, but pushed him harder, and Wilder then struck Anderson again with the knife, his object in striking being, according to his testimony, to get away from Anderson, who was squeezing him and had struck him twice with the beer glass. The barkeeper then drew a revolver on Wilder and ordered him out and he went. Anderson fell to the floor and soon died. Daniels testified he was reading a newspaper and did not pay much attention to what was going on. He testified Wilder was not asleep, and was sober and not drunk; that Wilder might have been drink-

ing but was sober enough to walk straight. He testified that Anderson was there before Wilder came in and sat down; that Anderson left the bar and walked up ' to Wilder and said something to Wilder which Daniels did not hear, and then went back to the bar; that Wilder went up to the bar and after he had asked for water, Anderson called Wilder a black son of a bitch, and Wilder replied, " I don't have to take that from anybody." Then Wilder pulled out a knife and went at Anderson, and Anderson fell on his face, and the barkeeper pointed a revolver at Wilder, and Wilder backed out of the saloon. Daniels could not say whether Anderson hit Wilder with a glass, but he says there was a glass broken before Wilder hit Anderson' with the knife. Daniels testified he did. not think Anderson had hold of Wilder at all, but that they were close together, and that ·Anderson might have had hold of Wilder without his seeing it. Anderson was sober. What liquor Wilder had in that saloon that day he had at an earlier visit. These were both plaintiff's witnesses, and Wilder gave much the more precise and specific account of the details of the transaction.

It seems to us the natural conclusion from the testimony is that Anderson was killed "because he made two unprovoked assaults upon Wilder and called him vile names, and had Wilder in a position where he was liable to do Wilder a serious bodily injury, under circumstances which naturally led Wilder to defend himself. Apparently Anderson's death was the result of his own wilful and unlawful conduct. If so, the case is within the principles announced in Shugart v. Egan, 33 Ill. 56, and Schmidt v. Mitchell, 84 Ill. 195. If, on the contrary, this killing was caused by Wilder's intoxication, then King v. Haley, 86 Ill. 106, applies. After considering the proof before us, we do not feel satisfied to let the judgment stand. Defendants insist we should not remand the cause. We conclude more light may be cast upon the case at another trial. The bartender did not testify, and the proof shows a man named Geisler came in just before the affray, who apparently was present.

We cannot assent to the position of plaintiff that she has a cause of action, even if Wilder's intoxication did not cause or contribute to Anderson's death. Upon that theory, even if Anderson, who was sober, made an unprovoked and murderous assault upon Wilder, and though Wilder then killed Anderson in necessary self-defense, yet if Wilder was then intoxicated, those who sold Wilder the liquor which made him intoxicated and the owners of the buildings in which the liquor was sold to Wilder, would be liable in damages to Anderson's family for Anderson's death, and of course would be liable to Anderson himself if he was not killed but was disabled. We cannot hold the legislature so intended. A statute which would make the seller of liquor responsible for all the acts of the buyer while intoxicated thereby, when the acts were not in any way caused by the intoxication, would in our judgment be so unreasonable as to be invalid. Liquor dealers may very properly be held responsible for the natural results of their traffic, but not for conduct which is in no way caused by it. It is our duty to so construe the statute, if reasonably possible, as to leave it valid. Haven & Geddes Co. v. Diamond, 93 Ill. App. 557.

Wilder went directly from Sauter's saloon to a barber shop near by. On cross-examination of Wilder, defendants inquired what he said at the barber shop, but the court sustained objections thereto. The majority of this court hold this inquiry should have been permitted on the ground that as Wilder had testified he was drunk, this was proper cross-examination to ascertain from his conversation immediately afterwards whether he was intoxicated; that what he then said and his manner of speech and ability or inability to remember and narrate correctly what had just taken place might prove a test of the truth or falsity of his testimony on direct examination that he was drunk when the affray took place. We approve the action of the court upon the instructions, so far as that action has been brought to our attention in argument.

We are of opinion the facts should be submitted to another

jury. The judgment is therefore reversed and the cause
remanded.

*Reversed and remanded.*

Per Curiam.

This case was originally affirmed, and upon a petition
by appellants a rehearing was granted on October 6, 1903,
and thereafter on March 14, 1904, the foregoing opinion
was filed, reversing the judgment and remanding the cause.
By some error for which the judges of this court are not
responsible that first opinion was published in Sauter v.
Anderson, 110 Ill. App. 574, where it is incorrectly stated
that the rehearing was denied.

Appellee has now petitioned for a rehearing, and earn-
estly insists that Daniels contradicted Wilder upon the
material facts of the case; that the jury believed Daniels in-
stead of Wilder; that the jury were the sole judges of the
credibility of the witnesses and that we ought not to inter-
fere with their conclusion, and that we have not sufficiently
considered certain features of the proof. In fact, our more
mature conclusion to award a new trial was reached after
a careful review of the testimony. We have now again
carefully considered the evidence as it appears at length
in the record. Appellants offered no proof. Wilder and
Daniels were called and examined at length by appellee
upon the circumstances attending the killing of Anderson.
We do not concede that Daniels contradicted Wilder upon
the material facts. Daniels was reading a newspaper when
the trouble began. He corroborated Wilder in the state-
ment that Anderson left the bar and went to where Wilder
was sitting and that an altercation there took place between
them, but he testified that he did not pay attention and did
not know what occurred there and did not hear what was
said there, except that he finally admitted he heard Ander-
son there call Wilder "a black son of a bitch." He corrob-
orated Wilder in the statement that Wilder afterwards
came to the bar and asked for a glass of water, and that
Anderson there again called Wilder "a black son of a
bitch." As to what occurred thereafter, where Daniels did

not tell all that Wilder related, he was not positive in his testimony, but said he did not see or hear it, but conceded that Anderson and Wilder were close together and that what Wilder testified to might have occurred. Wilder was a witness called and fully examined by appellee upon these subjects. We concede the rule that where a party is surprised by unexpected testimony of a witness called by him, he is not concluded thereby, but may show a different state of facts by another witness. Appellee cannot, however, ask us to disbelieve Wilder where Daniels did not contradict him, but only testified he did not see or hear what he admits may have occurred without his observing it. Wilder gave a much fuller and more detailed account of the transaction than Daniels did. Appellee tried her case upon the theory that she was not required to prove that Wilder's intoxication caused him to kill Anderson, but that she established a cause of action by showing that Wilder was intoxicated when he killed Anderson, and that appellants contributed to that intoxication. Appellee proved by Wilder that Anderson was the assailant and provoked the controversy and grossly abused Wilder, and did not disprove those facts by Daniels.

The law has confided to this court the final duty of determining whether a verdict is clearly against the weight of the evidence, and of awarding a new trial when we find that it is. This duty is clearly expressed in C. & A. R. R. Co. v. Heinrich, 157 Ill. 388; C. & E. I. R. R. Co. v. Meech, 163 Ill. 305; and Chicago City Ry. Co. v. Mead, 206 Ill. 174. Our re-examination of the testimony in considering this petition, strengthens our conviction that it is our duty to require this cause to be submitted to another jury. Appellee's petition for a rehearing is therefore denied.