WYATT *v.* CHOSAY.

1. INTOXICATING LIQUORS—CIVIL ACTION—BURDEN OF PROOF—
   PROXIMATE CAUSE.

   The plaintiff who is suing on the statutory right of action ac-
   corded injured persons under the liquor law because of the
   unlawful sale of intoxicating liquor by a licensee has the bur-
   den of proof to show that the injury was sustained because of
   the negligent or otherwise wrongful conduct of the party to
   whom the liquor was unlawfully served, that such person was
   intoxicated and that the intoxication was the proximate cause
   of, or a contributing factor to, the death of the plaintiff's de-
   cedent (CL 1948, § 436.22).

2. SAME—INTOXICATION—EVIDENCE.

   The fact of intoxication of a 20-year-old purchaser of 3 ounces
   of whiskey and 6 ounces of beer would not follow merely from
   proof that he had consumed them and had an accident after
   having driven his car about 1½ miles thereafter in less than an
   hour and a half after liquor had been consumed (CL 1948,
   § 436.22).

3. SAME—INTOXICATION—EXPERT TESTIMONY—POSITIVE EVIDENCE—
   DIRECTED VERDICT.

   Testimony of physician, in answer to hypothetical questions, that
   20-year-old man who had consumed 3 ounces of whiskey and 6
   ounces of beer within less than an hour and a half of time he
   fatally injured plaintiff's decedent, was intoxicated *held*, in-
   sufficient to establish intoxication upon which to base verdict
   and judgment for plaintiff, where there was positive testimony
   that at the time of the accident the man was not intoxicated,
   which was not outweighed by the reluctantly-given testimony
   of plaintiff's expert witness, even when viewed in light most
   favorable to plaintiff on her appeal from judgment on defend-
   ant's motion for directed verdict (CL 1948, § 436.22).

   REFERENCES FOR POINTS IN HEADNOTES
   [1] 30 Am Jur, Intoxicating Liquors, §§ 622, 639.
   [2] 20 Am Jur, Evidence, § 216.
   [3] 20 Am Jur, Evidence, § 876.

Appeal from Bay; Leibrand (Karl K.), J. Submitted April 11, 1951. (Docket No. 65, Calendar No. 44,904.) Decided June 4, 1951.

Case by Bernice Faye Wyatt against Miles Chosay and Western Casualty & Surety Company for damages suffered when her husband was killed when wagon in which he was riding was struck by automobile driven by one Wackerle. Verdict for plaintiff. Judgment for defendant *non obstante veredicto.* Plaintiff appeals. Affirmed.

*Charles C. Legatz,* for plaintiff.

*Stanton, Montgomery, MacKenzie & Cartwright,* for defendants.

CARR, J. This case comes before the Court on appeal from a judgment for defendants entered by the circuit judge notwithstanding the verdict of the jury. It appears from the pleadings and the proofs that there is no dispute as to some of the material facts. The defendant Miles Chosay was, on the 23d of March, 1946, a licensed retail liquor dealer under the provisions of the liquor control act of the State,[*] and the other defendant was the surety on the bond required by section 22 of said law (CL 1948, § 436.22 [Stat Ann 1949 Cum Supp § 18.993]). Plaintiff's declaration in the instant case, which was filed March 3, 1948, alleged that she was the widow of Kenneth James Wyatt who was killed in a traffic accident on a public highway in Bay county as a result of negligent conduct on the part of one Clare Wackerle. The declaration further alleged that Wackerle was intoxicated as the result of liquor unlawfully sold to him by the defendant Chosay. At the time of the

___

[*] See PA 1933 (Ex Sess), No 8, as amended (CL 1948, § 436.1 *et seq.,* as amended [Stat Ann 1949 Cum Supp § 18.971 *et seq.*]).

accident Wackerle was 20 years of age, and plaintiff's pleading was apparently based on the theory that the sale to him was unlawful because he was a minor. It was specifically alleged that as the result of the furnishing of liquor to Wackerle he was rendered "unfit to operate an automobile upon the public highways of this State and unable to judge distances and speeds; unable to properly co-ordinate his muscles with his brain; unable to perceive danger to which he was subjecting the said Kenneth James Wyatt as well as himself and unable to properly control his car." The case was tried on plaintiff's behalf in accordance with the theory suggested by the declaration. Defendants by answer denied the making of any unlawful sale of intoxicating liquor to Wackerle, and further denied any unlawful act or negligence on their part contributing to the death of Kenneth James Wyatt.

On the trial of the case testimony was offered by plaintiff establishing that at the time of the injury to Mr. Wyatt, on March 23, 1946, he was riding, with others, on a horse-drawn wagon containing a quantity of hay. It is a fair inference that the vehicle was proceeding at a slow rate of speed. The proofs further indicated that on the rear of the vehicle there was displayed a "reflector" and a lantern, which, according to the testimony, was burning a few minutes before the accident. One of plaintiff's witnesses, in referring to this lantern, testified in answer to questions that it was a dim light.

Plaintiff further established that about 8 o'clock in the evening Clare Wackerle entered the place of business of defendant Chosay where he remained until nearly 9 o'clock. During such period he was served with approximately 3 ounces of whiskey and a 6-ounce glass of beer. On leaving the place he entered his automobile and drove along the highway for a distance of approximately 1½ miles to the point

where the accident occurred. It is conceded that he ran into the rear of the wagon on which Mr. Wyatt was riding, and that as a result the latter sustained injuries resulting in his death. Testifying as a witness in plaintiff's behalf, Wackerle claimed that he was driving about 40 to 45 miles per hour, that the accident happened about 9 o'clock in the evening, that his headlights were on, and that he did not notice any light on the rear of the wagon. It was also his claim that the lights of a car approaching from the opposite direction obscured his vision to some extent. He denied that he was under the influence of intoxicating liquor at the time, claiming in substance that on prior occasions he had drunk larger quantities of liquor without noticing any effect therefrom. Plaintiff also offered the testimony of a witness who reached the scene of the accident shortly after it occurred, and who expressed the opinion, based on his observation of Wackerle, that the latter was not intoxicated.

In the attempt to show that intoxication on the part of Wackerle caused or contributed to the accident and resulting death of Mr. Wyatt, plaintiff offered the testimony of 2 medical witnesses, Dr. S. Franklin Horowitz and Dr. William G. Gamble, Jr., each of whom, in answer to hypothetical questions, expressed opinions with reference to the matter of intoxication on the part of Wackerle. After discussing various factors affecting the situation, Dr. Horowitz declined to say that in his opinion Wackerle's driving judgment and his ability to control and direct his movements were affected by the liquor that he had consumed. Summarizing his conclusions, he said:

"I think that my answer has established that this man was not under the influence that affected his driving; that is the only answer that has been asked."

Plaintiff rested her claim that Wackerle was intoxicated as a result of drinking liquor furnished him by defendant Chosay, and that such intoxication was the cause of, or a contributing factor to, the death of Kenneth James Wyatt, principally on the statements of Dr. Gamble. A reading of the testimony of the witness indicates that, in expressing his opinions, he was uncertain as to material facts that he deemed essential for consideration. That part of his testimony that is most favorable to plaintiff is contained in the following excerpt:

"I would judge from what I can judge by this testimony as near as I can come to it, this man who was not a habitual drinker, was slightly under the influence of intoxication. Whether this would be evident in his walk I don't know, I was not there to see it. And, you haven't stated, as far as I know, the exact time the accident occurred. If he had had the accident an hour or half an hour after this alcohol was drunk, he would definitely be in the state of intoxication—that doesn't mean drunkenness."

The following testimony given on cross-examination is rather suggestive of the difficulty that the witness encountered in reaching a definite conclusion.

"Q. Well, now, Doctor, the amount of liquor that a man might consume to cause him to become intoxicated varies, does it not?
"A. Yes, sir.
"Q. And that depends on his physical condition?
"A. Yes, sir.
"Q. And depends on when he ate?
"A. Yes, sir.
"Q. It depends on atmospheric conditions?
"A. To a very mild extent.
"Q. What is that?
"A. To a very mild extent, atmospheric conditions.

"*Q.* Hot weather has more effect than cold weather?

"*A.* To a certain extent.

"*Q.* And your barometric pressure.

"*A.* It doesn't make any difference, as I said before, how much a man drinks, but it is the amount he absorbs into his blood stream.

"*Q.* And you can tell that from a hypothetical question?

"*A.* No, sir.

"*Q.* A person who would be the best judge is an expert—Assuming that you were at the scene of the accident and you saw this man and examined him before and immediately after the accident, you would be in a better position to judge—

"*A.* (Interposing) : I wouldn't consider myself an expert unless I analyzed the blood at the time.

"*Q.* That is the only way you can tell?

"*A.* That, or the spinal fluid.

"*Q.* What is that?

"*A.* That, or the spinal fluid, yes.

"*Q.* And it would depend as far as you are concerned on the amount of alcohol in the blood stream?

"*A.* Yes.

"*Q.* Now, as an expert you had seen intoxicated persons and knew what an intoxicated person did, and if an expert saw this man immediately before or immediately after the accident, he would be in a better position?

"*A.* Yes, sir.

"*Q.* And such an expert would be in a better position to say whether the man was intoxicated than you were?

"*A.* Yes, sir. * * *

"*Q.* Did I understand that you agree with Dr. Horowitz that this wouldn't affect the driving?

"*A.* No, I didn't say that. I said I couldn't answer the question as it was put because there are several factors that are still not known, that haven't been brought out in the testimony."

It appears from the foregoing that Dr. Gamble was unwilling, on the basis of the hypothetical questions propounded to him, to express a positive opinion that Wackerle at the time of the accident was intoxicated to an extent that affected his ability to operate his car in a proper and lawful manner.

At the conclusion of plaintiff's proofs, counsel for defendants moved for a directed verdict, claiming in support thereof that the testimony was insufficient to show that Wackerle was intoxicated at the time of the accident, and further claiming that the sale to Wackerle of the liquor consumed by him was not unlawful. The motion was taken under advisement by the court under the provisions of CL 1948, § 691.691 (Stat Ann 1949 Cum Supp § 27.1461). At the conclusion of defendants' proofs it was renewed, and a like action taken.

On behalf of defendants, evidence was introduced to refute plaintiff's claim as to the intoxication of Wackerle. Two members of the Michigan State Police testified that they reached the scene of the accident shortly after it had occurred, that they talked with Wackerle, and noticed nothing indicating intoxication on his part. Another witness testified that he left defendant Chosay's place of business with Wackerle, and that the latter gave no indication at that time of being under the influence of liquor.

The trial court submitted the case to the jury, which returned a verdict for plaintiff in the sum of $2,000. In answer to special questions submitted the jury found that Wackerle was intoxicated at the time of the accident and also while he was on defendant Chosay's premises. Based on the motion for directed verdict made on the trial, defendants asked for judgment notwithstanding the verdict. In disposing of the motion the trial judge filed an opinion in which, after discussing the testimony relied

on by plaintiff, he stated his conclusion that there was no competent evidence of intoxication to warrant submission of that issue to the jury. From the judgment entered for defendants, plaintiff has appealed.

Section 22 of the liquor control act, above cited, after making provision for the giving of a bond by a licensee, reads in part as follows:

"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a right of action in his or her name against the person who shall by such selling or giving of any such liquor have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injury, and the principal and sureties to any bond given under this law shall be liable, severally and jointly, with the person or persons selling, giving or furnishing any spirituous, intoxicating or malt liquors as aforesaid, and in any action provided for in this section, the plaintiff shall have the right to recover actual and exemplary damages in such sum not less than 50 dollars in each case as the court or jury may determine."

It will be noted that under the express language of the statute the right of action that is created in favor of designated persons to recover for injuries inflicted by an intoxicated person is limited to cases where such injuries occur "by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor." Plaintiff's case rested wholly on the statute, and in order to be entitled to recover damages in the trial court the burden of proof rested on her to show an injury sustained by her because of the negligent or otherwise wrongful

conduct of Wackerle, that Wackerle was intoxicated at the time as the result of the unlawful sale and furnishing to him of intoxicating liquor by defendant Chosay, and that the intoxication of Wackerle caused, or was a contributing factor to, the death of Kenneth James Wyatt.

The interpretation of the statute in question was considered in *Larabell* v. *Schuknecht,* 308 Mich 419. It was there said:

"It is true that if each one of the tavern keepers was responsible for the intoxication or for contributing to it and the intoxication caused decedent's conduct resulting in death, suit could be brought against all who contributed to the same intoxication for all damages resulting to the plaintiff within the purview of the statute."

*Flower* v. *Witkovsky,* 69 Mich 371, arose under an earlier statute of the State, the provisions of which were substantially identical with the civil damage provisions of the present liquor control act. Liability was there imposed on the defendant on the ground that the proofs established that the proximate cause of the injury for which damages were sought was drunkenness resulting from the consumption of liquor unlawfully sold by him. See, also, *Hill* v. *Alexander,* 321 Ill App 406 (53 NE2d 307).

The provisions of the Michigan act here involved are very similar in form to corresponding provisions of statutes in other States. In 48 CJS, pp 718, 722, it is said:

"An action under a civil damage law is maintainable only where intoxicating liquor has been sold, given, or furnished to another whose resulting intoxication causes actual damage or injury to the plaintiff of such a character as to come within the terms of the statute; but ordinarily under the statutes negligence of the seller need not be shown. * * *

"It would seem from some of the decisions that, in order to maintain an action under civil damage statutes, the furnishing of the intoxicating liquor, and the resulting intoxication, must be the proximate cause of the injury or loss for which the recovery is sought. Other decisions hold broadly that plaintiff may recover where the loss sustained is the result, whether direct or remote, of the intoxication, induced in whole or in part by liquors furnished by defendant; but this does not, of course, mean that a liquor seller may be held liable for injuries which are in no manner connected with the intoxication of the person in question. It is not necessary that the liquor furnished by defendant should be the sole, or even the principal, cause of the injury complained of; it is sufficient if the liquor furnished by him contributed to the intoxication which caused such injury."

The primary question at issue in the case at bar is whether there was competent testimony on which the jury might base a conclusion that the accident was caused by negligent conduct on the part of Wackerle, resulting wholly or in part from intoxication brought about by defendant Chosay's acts in selling and furnishing liquor to Wackerle. The fact that the liquor was consumed is not sufficient to establish intoxication at the time of, or immediately prior to, the accident. Such conclusion does not follow from the fact that an accident happened. *Nylund* v. *Gemo*, 295 Mich 75; *People* v. *Weaver*, 188 App Div 395 (177 NYS 71).

As before noted, Wackerle was plaintiff's witness. His testimony was quite positive to the effect that he was not under the influence of intoxicating liquor, that his ability to operate his automobile on a public highway was not impaired because of his drinking in defendant Chosay's place of business, and that on prior occasions he had partaken of a larger quantity of intoxicating beverage without becoming under the influence thereof. There is no testimony by any wit-

ness who saw Wackerle either immediately before or immediately after the accident that his conduct indicated that he was intoxicated. Dr. Horowitz, who was called by plaintiff as an expert witness, concluded, on the basis of the facts that he was asked to assume as correct, that Wackerle's ability to operate his car was not affected by the liquor that he had drunk in defendant Chosay's place of business. Dr. Gamble declined to express any opinion as to that issue on the basis of the facts given to him. In view of this situation the statements found in Dr. Gamble's testimony, made in answer to hypothetical questions, to the effect that in his opinion Wackerle became intoxicated or slightly intoxicated as the result of his drinking, were insufficient on which to base verdict and judgment for the plaintiff.

We are not unmindful of the rule requiring that the testimony be construed as strongly as possible in plaintiff's favor. However, the transcript of the testimony of plaintiff's expert witness, on the basis of which she claims the verdict of the jury should be upheld, indicates that he was reluctant to express definite conclusions in answer to the hypothetical questions submitted to him. It is apparent that he considered further facts essential to enable him to express any definite belief or conviction as to the matter in dispute. We may not indulge in speculation or conjecture, nor was the jury at liberty to do so. *Scott* v. *Boyne City, Gaylord & Alpena Railroad Co.*, 169 Mich 265. The burden of proof rested on the plaintiff to establish her case by competent evidence. Opinion testimony based on assumptions rather than on facts established by proof may not be given the effect of outweighing positive testimony. *In re Aylward's Estate*, 243 Mich 9.

The trial court was not in error in entering judgment for the defendants notwithstanding the verdict of the jury. It is unnecessary to discuss other ques-

tions argued by counsel.  The judgment is affirmed, with costs to defendants.

REID, C. J., and BOYLES, NORTH, DETHMERS, BUT-ZEL, BUSHNELL, and SHARPE, JJ., concurred.