## McKNIGHT v CARTER

Docket No. 80170. Submitted June 19, 1985, at Lansing.—Decided
August 5, 1985. Leave to appeal denied, 424 Mich —.

Marvel Carter visited a bar, C.J.'s Lounge, owned by Curtis L.
Johnson. He remained less than an hour and consumed three
drinks. He then left the bar with some friends and they sat in
Carter's car, in the bar's parking lot, for a period of about two
hours during which time they consumed a good deal of liquor
and beer and some marijuana. When they left Carter was
unquestionably under the influence of the intoxicants. A few
blocks from the bar Carter passed out and his car struck a
vehicle driven by Bennie McKnight. Bennie McKnight died of
the injuries received in the accident. Plaintiff, Linda McKnight,
on her own behalf and as personal representative of the estate
of Bennie McKnight, brought an action against Carter and
Curtis L. Johnson doing business as C.J.'s Lounge. The com-
plaint alleged negligence on the part of Carter and alleged that
Johnson was liable under the dramshop act for having served
intoxicating beverages to Carter. Plaintiff also alleged that
Johnson was liable for having failed to properly supervise the
bar's parking lot, allowing Carter to consume alcoholic bever-
ages not purchased from Johnson. Plaintiff further alleged the
violation of a city ordinance which prohibited a liquor licensee
from allowing disorderly conduct on his premises. The Genesee
Circuit Court, Judith A. Fullerton, J., granted summary judg-
ment in favor of defendant Johnson, and plaintiff appealed.
*Held:*

   1. The summary judgment on the dramshop claim was

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Intoxicating Liquors, § 561 *et seq.*
   Proof of causation of intoxication as a prerequisite to recovery
   under Civil Damage Act. 64 ALR3d 882.
[3-6] Am Jur 2d, Negligence § 322 *et seq.*
   See the annotations in the ALR3d/4th Quick Index under topics
   Negligence; Proximate Cause.
[5] Am Jur 2d, Intoxicating Liquors § 553 *et seq.*
   See the annotations in the ALR3d/4th Quick Index under topic
   Intoxicating Liquors.
[6] See the annotations in the ALR3d/4th Quick Index under topic
   Municipal Corporations § 3.

proper. The mere fact that Carter drank intoxicating beverages at the bar is not sufficient to establish that he was visibly intoxicated at that time. The plaintiff has not presented any proof that Carter was intoxicated when he was served in the bar. The evidence, rather, indicates that he was not intoxicated when he was in the bar.

2. The bar owner had no duty to the plaintiff's decedent. His duty to keep the premises safe for passersby extended only to those in the immediate proximity of the premises. The accident in this case occurred several blocks away. Furthermore, the fact that defendant Johnson's business involved solely the sale of alcohol does not serve to extend Johnson's duty to include plaintiff's decedent.

3. The city ordinance allegedly violated did not have as its purpose the prevention of the type of harm suffered by plaintiff's decedent nor was it designed to protect the class of persons in which plaintiff's decedent was included. Thus, summary judgment was properly granted on that claim.

Affirmed.

1. Intoxicating Liquors — Dramshop Act — Pleading.

A plaintiff, in order to maintain a dramshop action, must prove that (1) he was injured by the wrongful or tortious conduct of an intoxicated person, (2) the intoxication of the principal defendant was the sole or contributing cause of plaintiff's injuries, and (3) the bar owner sold the visibly intoxicated person liquor which caused or contributed to his intoxication (MCL 436.22; MSA 18.993).

2. Intoxicating Liquors — Visible Intoxication — Evidence — Dramshop Act.

The mere fact that an alleged intoxicated tortfeasor drank alcoholic beverages is not sufficient to establish that he was visibly intoxicated for purposes of finding liability under the dramshop act (MCL 436.22; MSA 18.993).

3. Negligence — Elements of Negligence.

A prima facie case of negligence requires proof on each of four elements: (1) that defendant owed a legal duty to the plaintiff, (2) that defendant breached that duty, (3) that the breach of duty was the proximate cause of the damage to the plaintiff, and (4) that the plaintiff suffered damage.

4. Negligence — Duty — Foreseeability of Harm.

A third party may, under certain circumstances, have a claim in negligence against a defendant based upon the defendant's relationship with another party; among the factors considered

in determining whether a particular defendant has a duty to such a third party is the degree of foreseeability that the actor's conduct will create a risk of harm to the victim.

5. NEGLIGENCE — TAVERN OWNERS — DUTY TO PASSERSBY.

A tavern owner's duty to keep the premises safe may extend to passersby in the immediate vicinity of the building; the duty exists, however, only because of the proximity of the passersby.

6. NEGLIGENCE — VIOLATION OF ORDINANCE.

A court, in order to consider a violation of an ordinance as bearing on a defendant's negligence, must first find that the purpose of the ordinance was to prevent the type of injury and harm actually suffered and that the ordinance must have been designed to protect the class of persons in which the person harmed is included.

*Bennett S. Engelman,* for plaintiff.

*Warner & Mikiciuk, P.C.* (by *Donald A. Krispin),* for defendant Curtis L. Johnson.

Before: ALLEN, P.J., and WAHLS and J. P. O'BRIEN,* JJ.

ALLEN, P.J. Plaintiff appeals as of right from orders dated July 16, 1984, and August 16, 1984, granting summary judgment to defendant Curtis L. Johnson, doing business as C.J.'s Lounge. No judgment was entered in regard to defendant Marvel Carter and he is not a party to this appeal.

At approximately 11:00 p.m. on December 14, 1980, defendant Marvel Carter entered defendant Curtis L. Johnson's bar, C.J.'s Lounge, in Flint, Michigan. Carter had consumed no alcoholic beverages for at least four or five hours prior to entering defendant's establishment. During the 30 to 45 minutes that Carter was in defendant's bar, he drank "2 Millers" and a "gin and grapefruit" and visited with three friends, Jimmy Roman, Ray

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

Hodo and Calvin Leaper. Rather than continue to spend money in the bar, Carter suggested to his friends that they go to his car where he had several bottles of liquor, "Millers" and "Champale". The men took no alcohol from defendant's bar into Carter's car.

The four men remained in Carter's car for approximately one and one-half to two hours during which they consumed a "couple of quarts" of liquor and a quart bottle of Champale. They also drank an unknown quantity of Millers and shared eight to ten "joints" of marijuana. By the time they were ready to go home, they were all "feeling good". There was no question that at this point Carter was under the influence of the intoxicants.

After Roman, Hodo and Leaper left the parking lot to return home, Carter drove his car left out of the parking lot and traveled north-bound on Saginaw Road. After a few blocks, Carter passed out, and his car crossed over the centerline of the road and struck the vehicle of Bennie McKnight. Mr. McKnight died from the injuries sustained in the accident. Carter subsequently pled guilty to negligent homicide.

Plaintiff Linda McKnight, on her own behalf and as personal representative of the estate of her husband Bennie McKnight, filed a complaint with the Genesee County Circuit Court on August 7, 1981, naming Carter and defendant, as owner of C.J.'s Lounge, as defendants. In the complaint, plaintiff asserted that the collision between the Carter and McKnight cars was the result of Carter's negligence in driving under the influence of alcohol. Plaintiff also asserted that defendant had served alcohol to Carter while Carter was in an intoxicated condition. Accordingly, plaintiff contended that, because the furnishing of alcohol to Carter was the proximate cause of the collision,

defendant was liable for damages arising out of the injuries sustained by McKnight and for plaintiff's loss of her husband's earnings.

Plaintiff's first amended complaint was filed on September 8, 1982. In addition to the dramshop action set forth in the original complaint, plaintiff added a premises claim asserting that defendant was liable for damages arising out of his failure to properly supervise the bar's parking lot, thus allowing Carter to consume alcoholic beverages not purchased on defendant's premises.

On June 21, 1984, defendant filed a motion for summary judgment under GCR 1963, 117.2(1) and (3) [now MCR 2.116(C)(8) and (10)]. Defendant claimed that he was entitled to summary judgment under GCR 1963, 117.2(3) for the reason that the uncontested facts failed to show that defendant sold or furnished liquor to Carter while Carter was visibly intoxicated. Defendant further asserted that he was entitled to summary judgment under GCR 1963, 117.2(1) on the "premises" claim for the reason that defendant had no duty to plaintiff's decedent to supervise the parking lot. In support of his motion, defendant attached affidavits prepared by Carter, Roman, and defendant's attorney, Charles Warner.

In opposition to defendant's motion for summary judgment, plaintiff filed a brief asserting that the issue of whether Carter was served alcohol by defendant while Carter was visibly intoxicated was a question of fact and that a question of fact existed because Carter's deposition indicated that he was drunk at the time of the accident and that he had consumed some alcohol at defendant's bar. As to the premises count, plaintiff asserted that *Upthegrove v Myers,* 99 Mich App 776; 299 NW2d 29 (1980), *lv den* 411 Mich 884 (1981), the case

upon which defendant relied, could be distinguished.

A hearing on defendant's motion was held July 2, 1984, at which plaintiff requested and was granted the right to again amend her complaint by adding an additional count (count III) based on negligent violation of a city ordinance. However, on July 16, 1984, defendant's motion for summary judgment as to count I (dramshop action) and count II (premises action) of the amended complaint was granted.

On July 23, 1984, plaintiff filed her second amended complaint which added count III alleging that defendant owed a duty to plaintiff not to violate § 6-20 of the Flint City Code, which prohibited a liquor licensee from permitting "disorderly conduct". According to plaintiff, defendant had breached his duty to plaintiff by allowing Carter to consume excessive amounts of liquor in defendant's parking lot. Consequently, plaintiff contended that defendant was liable for damages arising out of the alleged violation of § 6-20.

On August 2, 1984, defendant filed a motion for summary judgment under GCR 1963, 117.2(1) and (3) as to count III. A hearing on defendant's motion was held on August 7, 1984, at which time plaintiff asserted that the consumption of alcoholic beverages in the parking lot of a bar was "disorderly conduct". The trial court ruled that the ordinance was not designed to protect against the type of injury involved in the instant case. The trial court explained that the ordinance was designed to give neighbors some protection from disorderly conduct in their immediate proximity. The ordinance was not intended to protect persons six to ten blocks away from the site of the alleged disorderly conduct.

The trial court further stated that the motion

had been granted under GCR 1963, 117.2(1), for the reason that neither party supplied the court with any factual support by way of depositions or affidavits as required to decide a motion under GCR 1963, 117.2(3). An order granting summary judgment as to count III of plaintiff's second amended complaint was entered on August 16, 1984. From the orders of summary judgment so entered, plaintiff appeals, contending that the trial court erred in dismissing each count of the second amended complaint.

### I. *Did the trial court err in granting summary judgment to defendant on plaintiff's dramshop claim?*

The dramshop act, MCL 436.22; MSA 18.993, provides a cause of action against tavern owners for the unlawful sale of alcohol to a "visibly intoxicated person", where the sale is a proximate cause of injuries. *Lucido v Apollo Lanes & Bar, Inc,* 123 Mich App 267, 270; 333 NW2d 246 (1983); *Hollis v Abraham,* 67 Mich App 426, 430-431; 241 NW2d 231 (1975). In order to maintain a dramshop action, the plaintiff must prove that:

> "1) he was injured by the *wrongful* or *tortious* conduct of an intoxicated person, 2) the intoxication of the principal defendant was the sole or contributing cause of plaintiff's injuries, and 3) the bar owner sold the visibly intoxicated person liquor which caused or contributed to his intoxication." *Archer v Burton,* 91 Mich App 57, 60; 282 NW2d 833 (1979). (Emphasis in original.)

The mere fact that the alleged intoxicated tortfeasor drank alcoholic beverages is not sufficient to establish that he was visibly intoxicated. *Juckniess v Supinger,* 323 Mich 566; 36 NW2d 148 (1949);

*Wyatt v Chosay,* 330 Mich 661; 48 NW2d 195 (1951); *Lasky v Baker,* 126 Mich App 524; 337 NW2d 561 (1983). In *Wyatt,* a case brought under the statute which only required that the person be an "intoxicated person" rather than "visibly" in- toxicated, the Supreme Court was asked to deter- mine whether, as a matter of law, the consump- tion of three ounces of whiskey and six ounces of beer in less than one and one-half hours was in itself sufficient to raise a jury question as to whether the tortfeasor was intoxicated. The Court ruled that the fact that the liquor was consumed did not establish intoxication. The Court noted that actual intoxication did not depend just on the amount of alcohol consumed but on a number of factors including the tortfeasor's physical condi- tion and what the tortfeasor had eaten prior to or while drinking. The Court also found that intoxica- tion could not be inferred merely from the fact that the tortfeasor subsequently became involved in an automobile accident.

In *Lasky,* a case arising under the present ver- sion of MCL 436.22; MSA 19.993, which requires "visible" intoxication, our Court found sufficient evidence of visible intoxication to send the case to the jury. In *Lasky,* however, unlike in the instant case, the plaintiff presented evidence that the tortfeasor left the defendant's tavern staggering, slurred his words, and had difficulty getting into his truck. In the instant case, except for evidence that plaintiff had consumed some alcohol in the bar before going outside to his car, plaintiff has not come forward with any proof that defendant was visibly intoxicated when he was served in the bar.

To the contrary, Carter's and Roman's deposi- tions and affidavits indicated that Carter was not visibly or otherwise intoxicated when he left defen-

dant's establishment. In his affidavit and deposition, Carter stated that while in defendant's tavern he had two Millers and one gin and grapefruit juice to drink. Carter stated that when he left defendant's bar for the parking lot he had no difficulty talking and was not slurring his words or staggering. He further asserted that he was not involved in any fights while in the bar and did nothing that would make him look as though he were intoxicated. In addition, he stated that he did not feel the effects of the alcohol he consumed while in defendant's tavern or, if he did, it was "so slight" as to be of no consequence. Similarly, Roman stated that there was nothing in Carter's manner which indicated that Carter had been drinking alcohol before he began drinking in the car. Plaintiff made no assertion that she knew of any witnesses or evidence which would tend to indicate that Carter was visibly intoxicated *while in defendant's bar.* Therefore, under the rulings in *Wyatt, Juckniess* and *Lasky, supra,* the facts that plaintiff had consumed alcohol in defendant's bar, that he was intoxicated at the time of the accident, and that there was an intervening source of alcohol were not sufficient to raise a material issue of fact as to whether Carter was visibly intoxicated at the time he was served alcohol by defendant.

We disagree with plaintiff's claim that this Court's ruling in *Crider v Borg,* 109 Mich App 771; 312 NW2d 156 (1981), supports the position that visible intoxication may be inferred solely from the amount of liquor consumed in the tavern by Carter. The motion for summary judgment in *Crider* was made prior to completion of discovery. The Court ruled that, because discovery was not yet completed, the motion was premature.

"The question is not the complexity of the issues

involved but whether further discovery stands a fair chance of uncovering factual support for the litigant's position. In our opinion, further discovery in this case might provide sufficient facts to make out a jury question." 109 Mich App 772, 773.

In the instant case discovery had been completed before the motion for summary judgment was ruled upon and plaintiff had come forward with no evidence of visible intoxication of Carter prior to his going out to the parking lot to drink in his own car. Accordingly, we find no error in the grant of summary judgment as to count I.

## II. *Did the trial court err in granting summary judgment on plaintiff's claim that defendant negligently monitored the parking lot?*

The issue raised is of first impression. Basically involved is the question of whether the defendant tavern owner owed a legal duty to the plaintiff.[1] Michigan courts have recognized that under certain circumstances a third party may have a claim grounded on negligence against a defendant based upon the defendant's relationship with another party. In arriving at a determination that the particular defendant did or did not have a duty to the third-party plaintiff, the courts have weighed policy considerations for or against the asserted duty. An additional factor considered is the degree of foreseeability that the actor's conduct will create a risk of harm to the victim. *Duvall v Golden,* 139 Mich App 342, 349; 362 NW2d 275 (1984).

---

[1] A prima facie case of negligence requires proof on each of four elements: (1) that defendant owed a legal duty to the plaintiff; (2) that defendant breached that duty; (3) that the breach of duty was the proximate cause of the damage to plaintiff; (4) that plaintiff suffered damage. *Beals v Walker,* 98 Mich App 214, 224; 296 NW2d 828 (1980), quoting *Crews v General Motors Corp,* 400 Mich 208, 224; 253 NW2d 617 (1977).

Some examples will be helpful. In *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977), the Supreme Court held that in a products liability action the duty of due care of the manufacturer, wholesaler, and retailer of a product extended to a bystander affected by the use of the product. In *Clark v Dalman,* 379 Mich 251; 150 NW2d 755 (1967), the Supreme Court determined that a general contractor owed a duty not to endanger employees of a subcontractor or others lawfully present at the work site. In *Duvall,* this Court recognized that a physician had a duty to persons operating motor vehicles on a public highway to provide medication to a patient being treated for epilepsy or, at least, to warn the patient not to operate a motor vehicle unless he was under medication.

In *Upthegrove v Myers, supra,* this Court refused to impose liability on a defendant innkeeper to third parties arising out of a guest's visitor's use of alcohol in one of the defendant's rooms. In *Upthegrove* a room was rented in the defendant's hotel for the purpose of conducting a party. Among those attending the party was James Myers, who consumed a large amount of alcohol. The alcohol was not purchased from the defendant's inn, but the hotel did provide ice and glasses throughout the party. Eventually, the defendant's employees requested many of the guests to leave. Myers left the hotel, got into his car, drove approximately four miles and became involved in a collision in which Floyd Upthegrove was killed. As in count II of the instant case, suit was brought against the defendant hotel for negligent monitoring of its premises and failure to prevent disorderly conduct by those under its control. The trial court ruled that the defendant hotel had no duty to the plaintiffs' decedent.

On appeal, this Court stated that although other states recognized that an innkeeper's duty to keep premises safe extended to passersby in the immediate vicinity of the building, the duty existed only because of the proximity of the passersby. Our Court found that it was proximity which would give the injured third party a negligent-premises-type claim but, because plaintiffs' decedent in *Upthegrove* was injured four miles from the defendant's hotel, the hotel was found not to have had any duty to plaintiffs' decedent. Specifically, this Court stated:

"In the case at bar, no duty of the hotel can be found to the plaintiff to supervise the activities of the hotel guest's visitor after he left the premises. The hotel had fulfilled any duty it had to passersby to keep the premises reasonably safe. It has no further duty." 99 Mich App 780.

The accident in the instant case occurred six to ten blocks from defendant's bar on a nonadjacent street. Plaintiff's decedent was, therefore, not in the immediate proximity of defendant's bar. Consequently, under the ruling in *Upthegrove,* defendant owed no duty to plaintiff's decedent arising out of his duty to keep his premises reasonably safe.

Plaintiff argues, however, that *Upthegrove* is distinguishable in that defendant's business, unlike the defendant's business in *Upthegrove,* involved solely the sale of alcohol. In our opinion the fact that defendant is a tavern owner, as opposed to an innkeeper, is not a valid basis for distinguishing the ruling in *Upthegrove.* Insofar as foreseeability and public policy are concerned, the instant case presents a less compelling factual situation to impose liability than did the factual situation present in *Upthegrove.* In *Upthegrove,*

the defendant's employees were well aware that the defendant's guest and the guest's visitors were drinking heavily. The employees were forced to break up the party. In addition, the defendant took an active part in promoting the drinking by supplying glasses and ice. In the instant case, however, there was no evidence that defendant's employees were aware of Carter's intoxication. Nor did defendant take an active or continuing part in Carter's drinking in the parking lot. Therefore, even if the instant case were distinguishable from *Upthegrove,* the facts of the instant case do not justify imposing a duty on defendant toward plaintiff's decedent. Therefore, the order of summary judgment on count II is affirmed.

III. *Did the trial court err in granting summary judgment to defendant on plaintiff's claim that defendant negligently allowed Carter to violate § 6-20 of the Flint City Code?*

Section 6-20 of the Flint City Code provides in relevant part:

"No licensee shall permit on the licensed premises;

\* \* \*

"(b) any disorderly conduct or act which disturbs the peace and good order of the neighborhood."

The language suggests that the injury to be prevented by the ordinance was interference with the quiet enjoyment of property *by neighbors of the "licensee".* The language may also be interpreted as intending to protect passersby from disorderly conduct.

The type of injury which the ordinance was designed to protect against is interference with quiet enjoyment of neighboring property. That is

quite different than the type of injury occurring in the instant case, *viz.:* a traffic accident some six to ten blocks away from where the alleged disorderly conduct took place. Further, plaintiff's decedent was neither a neighbor nor a passerby of the tavern. Thus he was not within the class of persons which § 6-20 of the code was designed to protect. Before a violation of an ordinance may be considered as bearing on negligence, the court must find that the purpose of the ordinance was to prevent the type of injury and harm actually suffered. *Autry v Allstate Ins Co,* 130 Mich App 585, 593; 344 NW2d 588 (1983). Also, the ordinance must be designed to protect the class of persons in which the person harmed is included. *People v Phillips,* 131 Mich App 486, 494-495; 346 NW2d 344 (1984).

In the instant case, neither the purpose of the ordinance nor the person harmed falls within the type of injury or class of persons which the ordinance was designed to protect. Consequently, we find that the trial court's grant of summary judgment under GCR 1963, 117.2(1) and (3) should be affirmed.

Affirmed. Costs to defendant.