WALLING v ALLSTATE INSURANCE COMPANY

Docket No. 108277. Submitted March 8, 1990, at Lansing. Decided May 21, 1990.

Douglas Walling (individually and as personal representative of the estate of Jacklyn Walling, deceased), Sydney Walling and Kathlyn Johnston brought an action in Genesee Circuit Court against Allstate Insurance Company, Flint Osteopathic Hospital, Marilyn K. Safa and Riad Safa (doing business as The Hayloft), and several others. Plaintiffs alleged that Jacklyn Walling, a minor, had died from injuries sustained in a fire that destroyed a house insured by Allstate and that, shortly before her death, decedent had become intoxicated by consuming liquor obtained by decedent's friends from the Hayloft, and that she was taken to Flint Osteopathic Hospital after she began vomiting, but received no treatment on the basis of a lack of parental consent to treatment. Plaintiffs alleged liability by defendants Safa pursuant to the dramshop act and liability by the hospital based on its refusal of treatment. The court, Judith A. Fullerton, J., granted summary disposition in favor of the Safas and the hospital. Plaintiffs appealed.

The Court of Appeals *held:*

1. A private hospital, such as defendant hospital in this case, may be held liable for refusing to admit or treat a member of the public who presents himself with an unmistakable medical emergency. Here, however, the evidence presented below did not indicate that decedent had an unmistakable emergency when she was taken to defendant hospital.

2. MCL 333.6121(1); MSA 14.15(6121)(1), which allows a minor who is or professes to be a substance abuser to consent to the provision by a hospital, clinic, or health professional of medical or surgical care, treatment, or services related to substance abuse, does not require a hospital to provide such

REFERENCES

Am Jur 2d, Hospitals and Asylums § 16; Drugs, Narcotics, and Poisons § 74; Infants §§ 16, 72; Intoxicating Liquors §§ 554, 567, 578, 580, 594.

See the Index to Annotations under Children; Dramshop Acts; Drugs and Narcotics; Hospitals; Medical Care and Treatment.

services, but merely permits the hospital to provide services without the prior consent of the minor's parents.

3. The trial court erred in ruling that the personal representative of decedent's estate was not a proper party plaintiff in the dramshop claim against defendants Safa with respect to injuries suffered by the decedent herself. Nevertheless, summary disposition of this claim was proper since plaintiffs failed to show that decedent's friends were acting as her agents when they obtained the liquor from the dramshop defendants in this case.

Affirmed.

GRIFFIN, P.J., concurred in all respects except for the determination that the personal representative of decedent's estate was a proper party plaintiff in the dramshop claim. He opined that it is well settled that an action may be brought under the dramshop act only by the heirs of the decedent acting in their individual capacities.

1. HOSPITALS — REFUSAL TO ADMIT OR TREAT PATIENT — UNMISTAKABLE EMERGENCY.

A private hospital may be held liable for refusing to admit or treat a member of the public who presents himself with an unmistakable medical emergency; an unmistakable emergency exists when a reasonable person would say that the person's life is in immediate danger.

2. INFANTS — CONSENT TO TREATMENT FOR SUBSTANCE ABUSE — HOSPITALS — STATUTES.

The statute which allows a minor who is or professes to be a substance abuser to consent to the provision by a hospital, clinic, or health professional of medical or surgical care, treatment, or services related to substance abuse does not require a hospital to provide such services, but merely permits the hospital to provide services without the prior consent of the minor's parents (MCL 333.6121[1]; MSA 14.15[6121][1]).

3. INTOXICATING LIQUORS — DRAMSHOP ACT — DECEDENTS — PERSONAL REPRESENTATIVES — STANDING.

A personal representative of a decedent's estate whose cause of action is based on the dramshop act is a proper party plaintiff to recover damages for injuries suffered by the decedent himself (MCL 436.22; MSA 18.993).

4. INTOXICATING LIQUORS — DRAMSHOP ACT — PLEADING.

A plaintiff, in order to maintain a dramshop action, must prove that (1) he was injured by the wrongful or tortious conduct of an intoxicated person, (2) the intoxication of that person was

the sole or contributing cause of plaintiff's injuries, and (3) the defendant sold, gave or furnished the alleged intoxicated person the alcoholic beverage which caused or contributed to that person's intoxication (MCL 436.22[5]; MSA 18.993[5]).

5. INTOXICATING LIQUORS — DRAMSHOP ACT — AGENCY.

A defendant in a dramshop action may be held liable on an agency theory for damages suffered by the plaintiff where the plaintiff became intoxicated by consuming intoxicants sold by the defendant to a third party who was purchasing for the plaintiff's consumption and the defendant knew or should have known that the purchaser was acting on behalf of the plaintiff.

*Henry M. Hanflik,* and *David Melkus,* of Counsel, for plaintiffs.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for Flint Osteopathic Hospital.

*Kallas, Lower, Henk & Treado, P.C.* (by *Constantine N. Kallas* and *Nancy A. Plasterer*), for Marilyn K. Safa and Riad Safa.

Before: GRIFFIN, P.J., and WAHLS and BRENNAN, JJ.

BRENNAN, J. In this medical malpractice and dramshop action, plaintiffs appeal as of right from multiple orders for summary disposition entered in favor of defendants by the Genesee Circuit Court. We affirm.

On the night of January 1, 1984, Jacklyn Walling, Harold Cripe, Jr., Gary Frank and others went to The Hayloft, a Flint-area party store owned by Marilyn and Riad Safa. All of the members of the group were minors. While Walling waited in Frank's car, Cripe and Frank went into the store and purchased a substantial quantity of liquor. Frank made the actual purchase, using a fake driver's license and money given to him by Cripe. There is no question that Walling did not

contribute money toward the purchase of the liquor. Frank and Cripe left the store and returned to Frank's car. They drove away and made two stops during which time they proceeded to consume the liquor.

At some time during the evening, Walling became ill, vomiting several times and screaming. Frank drove Walling to Flint Osteopathic Hospital. Frank and Cripe assisted Walling into the emergency room where they sat her in a wheelchair.

An emergency room nurse questioned Walling concerning her ailments. The nurse noted that, although Walling appeared to be in pain, she had no trouble speaking and her speech was clear. The nurse informed Walling that the hospital would need permission from a parent or other responsible adult before the hospital would treat her. Walling refused to disclose her parents' telephone number. Walling then indicated that she was going to be sick. She vomited into an emetic basin. The nurse noted that the vomitus smelled of alcohol. Cripe admitted to the nurse that Walling had been drinking. Walling refused a second request to disclose her parents' telephone number. The nurse left Walling alone, hoping that she would change her mind. When the nurse went to check on Walling five minutes later, she discovered that Walling had left the hospital.

On the way back to Frank's car, Walling did not complain of any stomach pains and appeared to be sober during the drive to Cripe's home. Walling and Cripe got out of Frank's car at Cripe's home. Walling and Cripe went inside the house. Several hours later, during the early morning of January 2, 1984, a fire broke out inside the Cripe home, killing Walling.

Plaintiffs first argue that the trial court erred by

ruling that defendant hospital had no duty to examine and treat plaintiffs' decedent as a matter of law. Plaintiffs contend that the question of the hospital's duty is a mixed question of law and fact which could not be resolved in the context of a motion for summary disposition. Plaintiffs contend that the hospital's admitted violation of federal, state and hospital association standards is evidence of negligence which creates a disputed question of fact for a jury to decide.

The trial court did not err in finding that defendant hospital had no common-law duty to treat plaintiffs' decedent. The question whether a duty exists is one of law to be decided by the court. *Smith v Allendale Mutual Ins Co,* 410 Mich 685, 713; 303 NW2d 702 (1981), reh den 411 Mich 1154 (1981). The trial court ruled that defendant hospital did not owe a duty to treat plaintiffs' decedent because decedent did not present herself in defendant's emergency room in a condition which constituted an unmistakable medical emergency.

No reported case in Michigan has dealt with the issue whether a private hospital has a duty to treat members of the public who appear in its emergency room. The original rule at common law was that a private hospital did not have a duty to treat any patient not accepted by it. See Powers, *Hospital Emergency Service and The Open Door,* 66 Mich L R 1455, 1462-1463 (1968). The modern rule is that liability on the part of a private hospital may be based upon the refusal of service to a patient in a case of unmistakable medical emergency. *Valdez v Lyman-Roberts Hospital, Inc,* 638 SW2d 111, 114 (Tex Civ App, 1982); Anno: *Liability of hospital for refusal to admit or treat patient,* 35 ALR3d 841, § 4, pp 846-847. An unmistakable emergency exists when a reasonable person would say that the patient's life is in immedi-

ate danger. *Wilmington General Hospital v Manlove,* 54 Del 15; 174 A2d 135 (1961). The trial court applied the modern rule.

When dealing with an issue of first impression, a court may rely on precedents from other jurisdictions in deciding such a question. *Dodge v Blood,* 299 Mich 364, 371; 300 NW 121 (1941). We do not disagree with the rule applied by the trial court in deciding defendant hospital's motion for summary disposition and adopt it here.

The record clearly establishes that, although decedent walked into defendant's emergency room with some difficulty, she did not require medical assistance while there. Decedent was conscious and coherent. The evidence before the trial court was insufficient to create a genuine issue as to whether decedent's condition constituted an unmistakable emergency. Therefore, summary disposition was properly granted on this issue.

Moreover, the trial court correctly ruled that defendant did not owe a statutory duty under MCL 333.6121; MSA 14.15(6121) to treat decedent. The statute provides in part:

> The consent to the provision of substance abuse related medical or surgical care, treatment, or services by a hospital, clinic, or health professional authorized by law executed by a minor who is or professes to be a substance abuser is valid and binding as if the minor had achieved the age of majority. The consent is not subject to later disaffirmance by reason of minority. The consent of any other person, including a spouse, parent, guardian, or person in loco parentis, is not necessary to authorize these services to be provided to a minor. [MCL 333.6121(1); MSA 14.15(6121)(1).]

"Substance abuse" is defined as

> the taking of alcohol or other drugs at dosages

that place an individual's social, economic, psychological, and physical welfare in potential hazard or to the extent that an individual loses the power of self-control as a result of the use of alcohol or drugs, or while habitually under the influence of alcohol or drugs, endangers public health, morals, safety, or welfare, or a combination thereof. [MCL 333.6107(3); MSA 14.15(6107)(3).]

The purpose of the statute is to permit a hospital to provide medical treatment or care for substance abuse to a consenting minor without the prior consent of the minor's parents. The statute does not require a hospital to provide treatment or care for substance abuse.

Lastly, plaintiffs' argument that defendant's violation of federal, state and hospital association standards regarding the promulgation and enforcement of emergency room procedures is further evidence of negligence that would create a genuine issue of fact is without merit. The standards relied upon by plaintiffs are inapplicable to the claims against defendant.

Plaintiffs next argue that the trial court erred by ruling that the personal representative of the decedent's estate is not a proper party to sue to recover damages for decedent's conscious pain and suffering sustained prior to her death. Plaintiffs contend that the estate's claim for decedent's conscious pain and suffering should be reinstated against the dramshop defendants. While we agree that the personal representative of decedent's estate is the proper party to sue the dramshop defendants to recover damages for decedent's conscious pain and suffering, we must nevertheless affirm the trial court's order of summary disposition.

At the time of decedent's death, the dramshop act provided in part:

A wife, husband, child, parent, guardian, or other person injured in person, property, means of support, or otherwise, by a visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of intoxicating liquor to the person, if the sale is proven to be a proximate cause of the injury or death, shall have a right of action in his or her name against the person who by the selling, giving, or furnishing ⎣of] the liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the injury. . . . In the event of the death of either party, the right of action given in this section shall survive to or against his or her executor or administrator. [MCL 436.22(5); MSA 18.993(5).]

In *Robertson v Devereaux,* 32 Mich App 85, 91-92; 188 NW2d 209 (1971), a panel of this Court held that the personal representative of a decedent's estate whose cause of action is based upon the dramshop act is a proper party plaintiff to recover damages for injuries suffered by the decedent himself. We agree and hold that the personal representative of decedent's estate is a proper party to recover damages for decedent's conscious pain and suffering sustained before decedent's death.

However, we disagree with plaintiffs' argument that a liquor licensee's liability for all injuries proximately caused by an illegal sale of intoxicating beverages to a minor includes the injury or death of a second minor with whom the purchaser shared the alcoholic beverages. Plaintiffs contend that it was not necessary for them to show that the dramshop defendants knew or should have known that Harold Cripe and Gary Frank purchased the alcoholic beverages from them as decedent's "agent."

In order to recover under the dramshop act, plaintiffs must prove that (1) decedent was injured

by the wrongful or tortious conduct of an intoxicated person, (2) the intoxication of that person was the sole or contributing cause of decedent's injuries, and (3) defendants sold, gave or furnished to the alleged intoxicated person the alcoholic beverage which caused or contributed to that person's intoxication. *McKnight v Carter,* 144 Mich App 623, 629; 376 NW2d 170 (1985), lv den 424 Mich 859 (1985). Under the dramshop act, liability rests upon the immediate seller, giver or furnisher of the alcoholic beverage so that, if the alcoholic beverage is transferred to a third party who becomes intoxicated by consuming it and thereby suffers injury, the original seller, giver or furnisher is not liable. *Verdusco v Miller,* 138 Mich App 702, 705-707; 360 NW2d 281 (1984), lv den 424 Mich 863 (1985). However, liability may be imposed where it can be shown that the transferor purchased or received the alcoholic beverage as the "agent" of the injured third party. *Id.;* see also *Maldonado v Claud's Inc,* 347 Mich 395; 79 NW2d 847 (1956). Plaintiffs failed to make such a showing.

Frank's testimony established that he purchased the alcohol and that decedent did not contribute toward the purchase. While inside the liquor store, neither Frank nor Cripe alerted defendants that the alcohol was being purchased for decedent. Therefore, the trial court properly granted summary disposition in favor of the dramshop defendants.

The orders of summary disposition are affirmed.

WAHLS, J., concurred.

GRIFFIN, P.J. *(concurring).* I concur with Judge BRENNAN's opinion except for dicta which seeks to resurrect the discredited holding of *Robertson v Devereaux,* 32 Mich App 85; 188 NW2d 209 (1971).

It is well settled that an action may be brought under the dramshop act only by the heirs of the decedent acting in their individual capacities. MCL 436.22; MSA 18.993. The estate of the decedent is not a proper party plaintiff to bring a claim arising under the dramshop act. *O'Dowd v General Motors Corp,* 419 Mich 597, 605; 358 NW2d 553 (1984); *Genesee Merchants Bank & Trust Co v Bourrie,* 375 Mich 383; 134 NW2d 713 (1965); *Brannstrom v Tippman,* 141 Mich App 664; 367 NW2d 902 (1985), lv den 422 Mich 978 (1985).