# STATE OF MICHIGAN

# COURT OF APPEALS

---

JEFFREY S. MINDYKOWSKI and MICHELLE
M. MINDYKOWSKI,

      Plaintiffs-Appellees,

v

CODY M. OLSEN,

      Defendant,

and

CWB PROPERTY MANAGEMENT, INC., and
ALPENA HOTELS LLC,

      Defendants-Appellants.

UNPUBLISHED
March 10, 2015

No. 315753
Alpena Circuit Court
LC No. 12-004633-NO

---

Before: JANSEN, P.J., and METER and BECKERING, JJ.

PER CURIAM.

In this interlocutory appeal, defendants-appellants CWB Property Management, Inc., and Alpena Hotels LLC (hereinafter defendants) appeal as on leave granted[1] an order of the trial court denying their motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) in this dramshop and premises liability action. We reverse and remand.

## I. FACTS AND PROCEDURAL HISTORY

On May 22, 2011, plaintiff Jeffrey Mindykowksi[2] was assaulted and knocked unconscious by Cody Olsen shortly after 2:00 a.m. in the parking lot of the Alpena Holiday Inn.[3]

---

[1] *Mindykowski v Olson*, 497 Mich 880; 854 NW2d 711 (2014).

[2] Plaintiff Michelle M. Mindykowski is Jeffrey Mindykowski's wife. Her loss of consortium claim is derivative of Jeffrey's personal injury claims. The references herein to "plaintiff" are to Jeffrey.

-1-

At approximately 7:00 p.m. that evening, Olsen had attended a bachelor party with a friend, Steve Frank, and then briefly patronized a bar with Frank and another friend, Heather Phillips, before arriving at Sneakers Bar inside the Alpena Holiday Inn around 12:30 a.m. Olsen estimated that he had consumed between eight and ten beers before arriving at Sneakers. Olsen consumed one or two additional beers that he purchased at Sneakers.

Olsen left the bar at closing time and went outside with his friends to smoke. The weather was rainy, and a crowd had gathered underneath an awning at the entrance to the hotel. Amongst the crowd were some of Olsen's female friends, including Angela Moore and Alisha Nelson. According to Olsen, he and his friends were making fun of each other, arguing, calling each other derogatory names, and slapping each other. This encounter was captured on the hotel's video surveillance camera. Olsen subsequently walked to the parking lot and his friends followed. He and his friends continued to engage in similar behavior.

Plaintiff was also leaving Sneakers at closing time with his wife and his friend John Krawczak and his wife. According to plaintiff, he and Krawczak went to the hotel parking lot to retrieve Krawczak's vehicle while their wives waited underneath the awning. Once the men were inside the vehicle, an altercation erupted in the parking lot. According to plaintiff, he exited the vehicle and asked the people that were fighting near the vehicle to move so that Krawczak could leave his parking space. At that time, Olsen struck plaintiff repeatedly, rendering him unconscious. A bystander called 911, and plaintiff was taken to the hospital. Plaintiff suffered personal injuries as a result of the assault.

Plaintiff filed this action against defendants, alleging dramshop liability for serving a visibly intoxicated person and premises liability for failing to maintain reasonably safe premises. Plaintiff also raised a claim of assault and battery against Olsen. Defendants moved for summary disposition under MCR 2.116(C)(10), asserting that there was no actual evidence that defendants served alcohol to Olsen while he was visibly intoxicated on defendants' premises and, therefore, that plaintiffs could not establish a claim under the dramshop act, MCL 436.1801, *et seq*. Defendants did not deny that Olsen was intoxicated, but maintained that there was no evidence that Olsen was served alcohol while visibly intoxicated. Defendants noted that Olsen testified that he was not visibly intoxicated and that the Sneakers manager said she observed no evidence of intoxication. Defendants also asserted that plaintiff could not maintain a premises liability claim where defendants owed no duty to protect plaintiff from Olsen's unforeseeable criminal acts. Their only duty, defendants argued, was to summon police upon learning of any potential danger to plaintiff.

In his response to defendants' motion for summary disposition, plaintiff maintained that the number of drinks that Olsen consumed over the course of the evening, as well as the testimony of witnesses, established that Olsen was visibly intoxicated. Specifically, plaintiff relied on a police report that indicated that Alisha Nelson told officers that Olsen "was extremely intoxicated and belligerent." She allegedly told the officers that Olsen "apologized for his

---

[3] The hotel is operated by defendant CWB Property Management, Inc., and the hotel's liquor license is held by defendant Alpena Hotels LLC.

behavior that night and acknowledged he was an out-of-control drunk that night."[4]  Plaintiff further relied on Olsen's testimony at his criminal trial that he "could feel the alcohol" and Frank's testimony at the trial that Olsen "was intoxicated this night."  Plaintiff also relied on Michelle Mindykowski's deposition testimony that she observed that Olsen's eyes were "glossy . . . and irritable [sic]."  With regard to the premises liability claim, plaintiff maintained that the evidence showed that Olsen engaged in an altercation with Angela Moore and another altercation with Alisha Nelson, both of which involved name-calling and slapping.  Plaintiff maintained that defendants should have been aware of the altercations involving Olsen and should have protected plaintiff by contacting the police.

In finding a question of fact regarding whether Olsen was served while visibly intoxicated, the court referred to Nelson's "non-notarized statement that acknowledged that he [Olsen] was out-of-control drunk that night,"[5] as well as to Frank's testimony that "he seen him intoxicated before, and . . . thought he was intoxicated that night."[6]  The court took the premises liability issue under advisement.  Subsequently, the trial court denied summary disposition of the premises liability claim.  The court found that two conflicts occurred before Olsen's assault on plaintiff and that there was a question of fact regarding whether defendants acted reasonably in failing to report the earlier incidents.

## II.  DRAMSHOP CLAIM

Defendants argue that the trial court erred by denying their motion for summary disposition because plaintiff failed to present sufficient evidence to create a genuine issue of material fact with regard to whether Olsen was visibly intoxicated at the time he was served alcohol by defendants.  We review de novo a trial court's summary disposition ruling.  *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).  Under MCR 2.116(C)(10), we consider "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party."  *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

"Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."  *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).  When a court reviews a motion for summary disposition under subrule (C)(10), it may consider only "the

---

[4] Olsen denied making the statement.

[5] Defense counsel noted that Nelson's unnotarized affidavit was not attached to plaintiff's summary disposition brief that he received.  This Court denied plaintiff's motion to expand the record to include Nelson's finally-attested affidavit.  *Mindykowski v Olsen*, unpublished order of the Court of Appeals, issued December 10, 2013 (Docket No. 315753).

[6] Given the trial court's statement at the hearing that it "recall[ed] taking the plea in this case," it appears that the trial court was relying on its memory of the criminal proceeding in making its findings.

substantively admissible evidence actually proffered . . . ." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position with affidavits, depositions, admissions, or other documentary evidence. *Neubacher v Glove Furniture Rentals*, 205 Mich App 418, 420; 522 NW2d 335 (1994). The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. *Id.* Where the burden of proof on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. See *McCart v J Walter Thompson*, 437 Mich 109, 115; 469 NW2d 284 (1991). If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *McCormic v Auto Club Ins Ass'n*, 202 Mich App 233, 237; 507 NW2d 741 (1993).

The dramshop act was enacted by the Legislature "to discourage bars from selling intoxicating beverages to minors or visibly intoxicated persons and to provide for recovery under certain circumstances by those injured as a result of the illegal sale of intoxicating liquor." *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 611-612; 321 NW2d 668 (1982). "The dramshop act . . . provides a cause of action against tavern owners for the unlawful sale of alcohol to a 'visibly intoxicated person', where the sale is a proximate cause of injuries." *McKnight v Carter*, 144 Mich App 623, 629; 376 NW2d 170 (1985).

Specifically, MCL 436.1801(2) provides that "[a] retail licensee shall not . . . sell, furnish, or give alcoholic liquor to a person who is visibly intoxicated." MCL 436.1801(3) provides for a cause of action:

> [A]n individual who suffers damage or who is personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, shall have a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death. . . .

"[T]o establish 'visible intoxication' under MCL 436.1801(3), a plaintiff must present evidence of actual visible intoxication," *Reed v Breton*, 475 Mich 531, 534; 718 NW2d 770 (2006), and for a successful claim must also show "the element of serving alcohol to a visibly intoxicated person," *id*. at 539. The mere service of alcoholic beverages by employees to a person is insufficient to establish visible intoxication. *Heyler v Dixon*, 160 Mich App 130, 145; 408 NW2d 121 (1987).

The *Reed* case is highly instructive. In *Reed*, 475 Mich at 534-535, Curtis J. Breton, an intoxicated driver, crossed the centerline of US-127 at a high rate of speed and collided head on with a vehicle carrying Adam W. Kuenner and Lance N. Reed. All three men were killed. *Id.* at 535. The plaintiffs, the personal representatives of the estates of Kuenner and Reed, sued the

personal representative of Breton's estate and also sued the two bars that served Breton alcohol—the defendant, the Beach Bar, as the second-to-last establishment that served him, and the Eagles Nest. *Id*. at 534-535. The evidence showed that Breton spent the day consuming alcohol with his friend, John Marsh. *Id*. at 534. At 7:30 p.m., they consumed two beers at the defendant establishment. *Id*. Their server was trained to identify visibly intoxicated persons, and Breton did not exhibit any signs such that she would refuse him service. *Id*. at 534-535. Specifically, Breton did not exhibit slurred speech or a lack of coordination, act in an aggressive manner, or engage in erratic behavior. *Id*. Breton and Marsh left the defendant establishment and proceeded to the Eagles Nest, where they shared a pitcher of beer. *Id*. at 535. The men encountered their supervisor, Summit Township Fire Department Chief Carl Hendges, who did not believe that either man was intoxicated. *Id*. Additionally, witness Richard Potts, an acquaintance of Breton and owner of a convenience store that sold alcoholic beverages, saw Breton at the bar and noted that Breton's eyes were not bloodshot or glassy and he did not appear to be intoxicated. *Id*. Marsh did not observe any change in Breton's speech, ability to walk, or eye redness during the course of the day. *Id*.

After the accident, it was discovered that Breton had a blood-alcohol content of 0.215 grams of alcohol per 100 milliliters of blood. *Id*. The defendant, as the second-to-last establishment to serve Breton, sought summary disposition, relying on the rebuttable presumption of nonliability available to all but the last serving establishment under MCL 436.1801(8), and the contention that the plaintiffs failed to demonstrate that Breton was visibly intoxicated when served. *Id*. The plaintiffs alleged that factual issues precluded summary disposition. *Id*. at 535-536. In support of this contention, the plaintiffs presented the expert opinion of two toxicologists. *Id*. at 536. In their reports, the toxicologists estimated the number of drinks that Breton consumed in light of his age and weight and the alcohol levels in his blood and urine after the collision. *Id*. In light of their calculations, the toxicologists opined that Breton must have been significantly impaired and that manifestations of impairment, including disorientation and lack of coordination, must have been exhibited by Breton. *Id*. The trial court granted summary disposition in favor of the defendant establishment, concluding that the circumstantial evidence of the experts was insufficient to rebut the presumption of nonliability with unequivocal evidence. *Id*. This Court reversed, holding that the experts' testimony was sufficient to create a genuine issue of material fact. *Id*. at 536-537.

The Michigan Supreme Court reversed this Court's decision and reinstated the trial court's order granting summary disposition to the defendant, *id.* at 534, 544, holding that competent and credible proofs to show service to a visibly intoxicated person had not been presented:

> This standard of "visible intoxication" focuses on the objective manifestations of intoxication. While circumstantial evidence may suffice to establish this element, it must be actual evidence of the *visible* intoxication of the allegedly intoxicated person. Other circumstantial evidence, such as blood alcohol levels, time spent drinking, or the condition of other drinkers, cannot, as a predicate for expert testimony, alone demonstrate that a person was *visibly* intoxicated because it does not show what behavior, if any, the person *actually manifested* to a reasonable observer. These other indicia—amount consumed, blood alcohol content, and so forth—can, if otherwise admissible, reinforce the

finding of visible intoxication, but they cannot substitute for showing visible intoxication in the first instance. While circumstantial evidence retains its value, such (and any other type of) evidence must demonstrate the elements required by § 801(3), including "visible intoxication."

Plaintiffs here presented no evidence of Breton's visible intoxication at the time he was served at defendant's establishment in response to defendant's motion for summary disposition. The record reflects that all four eyewitnesses saw no signs that Breton was visibly intoxicated. Plaintiffs further relied on two expert toxicologists' expectations that Breton would have exhibited signs of intoxication. But reports discussing Breton's physical statistics and alcohol consumption, coupled with predictions of his impairment, offer only speculation about how alcohol consumption affected Breton that night. Expert post hoc analysis may demonstrate that Breton was *actually* intoxicated but does not establish that others witnessed his *visible* intoxication. Consequently, no basis for a DSA claim against defendant existed. Because plaintiffs failed to establish a genuine issue of material fact that Breton was visibly intoxicated even under § 801(3), the trial court correctly granted summary disposition for defendant. [*Id*. at 542-543 (emphasis in original; citations omitted).]

In the present case, viewing the evidence in the appropriate light, we conclude that plaintiff presented insufficient evidence to create a question of fact regarding whether Olsen was visibly intoxicated at the time he was served alcohol by defendants. Plaintiff relied heavily on the time period of consumption (approximately six to seven hours) and evidence that Olsen had consumed between 12 and 15 drinks. The *Reed* Court determined that this type of evidence is sufficient only to reinforce a finding of visible intoxication, but cannot substitute for showing manifested visible signs of intoxication in the first instance. The only other evidence on which plaintiff relied was Olsen's testimony at his criminal trial that he "could feel the alcohol," Frank's testimony at the criminal trial that Olsen was intoxicated, Alisha Nelson's statements to the police that Olsen was intoxicated and belligerent that night, and Michelle Mindykowski's deposition testimony that Olsen's eyes while in the parking lot were "glossy and . . . irritable." Significantly, however, with the exception of the police report,[7] plaintiff did not provide documentary evidence to support these facts and did not even attach transcript excerpts in his response to defendants' motion for summary disposition. MCR 2.116(G)(4).

Plaintiff failed to provide evidence regarding objective manifestations of visible intoxication at the time of the service of alcohol sufficient to create a genuine issue of material fact that Olsen appeared visibly intoxicated to a reasonable observer at the time he was furnished, served, or sold alcohol. See *Reed*, 475 Mich at 542-543. Consequently, the trial court

---

[7] Nelson's statements in this report were hearsay for purposes of the claims under review, but even if they had been usable, they did not provide evidence that Olsen was visibly intoxicated *when he was served alcohol at the bar*.

erred by denying defendants' motion for summary disposition with regard to the dramshop claim.

## II. PREMISES LIABILITY

Defendants also argue that the trial court erred by denying defendants' motion for summary disposition of the premises liability claim because defendants did not have a duty to protect plaintiff from Olsen's criminal acts in the absence of specific acts occurring on the premises that posed a risk of imminent and foreseeable harm to plaintiff.

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). Here, it is undisputed that plaintiff was an invitee of the Holiday Inn.[8]

The rules that govern a merchant's duty to protect invitees from criminal acts of third parties were set forth in *MacDonald v PKT, Inc*, 464 Mich 322, 338; 628 NW2d 33 (2001), as follows:

> [G]enerally merchants "have a duty to use reasonable care to protect their identifiable invitees from the foreseeable criminal acts of third parties." The duty is triggered by specific acts occurring on the premises that pose a risk of imminent and foreseeable harm to an identifiable invitee. Whether an invitee is readily identifiable as being foreseeably endangered is a question for the factfinder if reasonable minds could differ on this point. While a merchant is required to take reasonable measures in response to an ongoing situation that is taking place on the premises, there is no obligation to otherwise anticipate the criminal acts of third parties. . . . [A] merchant is not obligated to do anything more than reasonably expedite the involvement of the police. We also reaffirm that a merchant is not required to provide security guards or otherwise resort to self-help in order to deter or quell such occurrences. [Citations omitted.]

An identifiable invitee is one within the risk of harm created by the criminal conduct. *Bailey v Schaaf*, 494 Mich 595, 618; 835 NW2d 413 (2013).

Plaintiff alleged in his first amended complaint that defendants failed "to properly and timely respond to an escalating threat of assault which was clearly visible by their own video surveillance cameras." The "escalating threat of assault" to which plaintiff referred was Olsen's interactions with Angela Moore and Alisha Nelson. Plaintiff alleged that Olsen's testimony from his criminal trial established that these interactions showed a specific situation on the premises that would cause a reasonable person to recognize a risk of imminent harm. Plaintiff did not,

---

[8] An "invitee" is a person invited upon the land upon of another for the possessor's commercial purpose or pecuniary gain. *Benton*, 270 Mich App at 440.

however, present documentary evidence in support of this allegation in response to defendants' motion for summary disposition.[9] Plaintiff failed to present evidence that created a genuine issue of material fact that a duty was triggered by specific acts occurring on the premises that posed a risk of imminent and foreseeable harm. Accordingly, the trial court erred by denying summary disposition to defendants with regard to the premises liability claim.

Reversed and remanded for entry of an order granting summary disposition to defendants with regard to the dramshop and premises liability claims. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Patrick M. Meter

---

[9] Even assuming that the interactions between Olsen and Moore and Olsen and Nelson showed a specific situation on the premises that would cause a reasonable person to recognize a risk of imminent harm, there was no evidence that *plaintiff* was in danger or threatened by Olsen's interactions with Moore and Nelson. See *MacDonald*, 464 Mich at 338 (discussing an "identifiable invitee").